```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF VERMONT
```

UNITED STATES OF AMERICA        ]
                                ]
        v.                      ]    Docket No. 2:08-CR-72-1,2
                                ]
LEON KEITH CROMER and           ]
SYLVESTER CASSIAN EMANUS        ]


                        MEMORANDUM AND ORDER

Defendants Leon Cromer and Sylvester Emanus filed motions to suppress evidence found by law enforcement agents within their hotel room at the Red Roof Inn on May 28, 2008, together with statements taken from them later that day.  For the reasons stated below, the Court hereby denies the motions to suppress.

I.  *Background*

A confidential informant ("CI") informed law enforcement officers on May 28 it spoke with Valerie Socinski and Erin Churderski at the CI's apartment earlier that day.  Socinski and Churderski told the CI they were trying to purchase crack cocaine from a New York City man who was staying at the Red Roof Inn in Rutland.  They told the informant the male may be accompanied by another man.  Socinski and Churderski said they had purchased a shotgun to exchange for crack.  The CI helped them make a call to the supplier at a telephone number with a 718 area code, the area code assigned to Brooklyn, New York.  The CI overheard the phone conversation with the supplier and could identify the voice as that of an African-American male.  The two Rutland women made

arrangements to meet the supplier at Denny's Restaurant, next door to the Red Roof Inn. They then left the CI's apartment.

Socinski and Churderski returned to the CI's apartment a short time later, stating the supplier had not appeared at Denny's. With the assistance of the CI, they made another call to the supplier at the 718 area code number. Socinski and the male supplier argued about where the meeting should take place. The supplier wanted them to go to his hotel room at the Red Roof Inn. The two Rutland women then left the CI's apartment. A short time later, the CI had a phone conversation with Socinski who indicated they had successfully obtained the crack.

Agents established surveillance at the Red Roof Inn in the early afternoon of May 28th. Agent Chetwynd of the DEA asked the front desk clerk if any African-American men from New York City were staying at the hotel or if any such individuals had recently checked out. Two employees told the agent there were two African-American men in Room 237. The men had checked in the previous day, paying cash for a single evening. Later they extended their stay for the night of May 28th. The registration was in the name of Leon Cromer with a Brooklyn, New York address. He had a vehicle registered in New York. Both males in Room 237 had recently come to the lobby area to use the computer.

At about 4 p.m., agents conducted a "knock and talk" interview at Room 237. Agent Richard Carter knocked on the door

and received no response.  Agents heard movement in the room, and Agent Carter then knocked louder.  Again there was no response.  Agent Carter then yelled out "Leon" and a male answered "what."  The male was directly on the other side of the door.  The agent identified himself as a law enforcement officer and said he needed to speak with him.  The subject said "ok."  A number of seconds elapsed but still the occupants did not open the door.  Again the agents heard movement and a bathroom door closing.  Based upon years of experience, Agent Carter knew the occupants were attempting to flush the drugs down the toilet.  Agent Carter used a pass key to open the door, and at the same time Cromer opened the door.  The agents immediately entered the room, noticed the bathroom door closed.  They forcibly entered the bathroom, finding Defendant Emanus attempting to flush four or five wrapped plastic packages of crack down the toilet.  One package was recovered.  The package was field tested to contain cocaine.  Both Emanus and Cromer were placed under arrest.  Both defendants subsequently waived Miranda rights and made incriminating statements.

II. *Conclusions*

The Government relies upon two arguments to support the legality of the agents' entry into the defendants' hotel room.  First the government argues probable cause existed to believe drugs were in the room once the agents heard movement in the

room, suggesting the defendants were engaged in destroying evidence, and that the exigent circumstances justified warrantless entry at that point. Alternatively the government argues exigent circumstances or "urgent need" justified the warrantless entry.

The Court has defined probable cause on innumerable occasions. Probable cause exists to search when there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). To determine probable cause courts look to the totality of circumstances "from the standpoint of an objectively reasonable police officer." *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

A warrantless entry into a hotel room is "presumptively unreasonable" unless "exigent circumstances demand police act speedily." *United States v. Fields*, 113 F.3d 313, 322-23 (2d Cir. 1997). "The burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984). Exigent circumstances are present when either the evidence sought is in imminent danger of destruction or if the safety of the public or law enforcement is threatened. *Id.*, at 23. "The essential question in determining whether exigent circumstances justified a

warrantless entry is whether law enforcement agents were confronted by an 'urgent need' to render aid or take action." *United States v. MacDonald*, 916 F.2d 766, 769 (2d. Cir. 1990). In *MacDonald,* the Second Circuit found courts must evaluate exigency based upon a totality of circumstances perspective. The Circuit did provide a number of examples as factors courts may assess to determine the presence of exigent circumstances:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause ... to believe tat the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

*Id.*, at 769-70.

At the outset, defendants do not rely upon the process of knock and talk to support its suppression motion. Given the information provided to agents by the CI and corroborated in part by employees of the Red Roof Inn, agents were justified in deciding to engage in a knock and talk at the defendants' hotel room.

The Court finds probable cause existed for agents to reasonably believe evidence of criminal activity would be found within the hotel room at the time of the agents' entry. The CI relayed to the agents self incriminatory statements made by Socinski and Churderski describing crack dealing in the Red Roof

Inn. Their supplier was an African-American male from New York City with a Brooklyn telephone number who was selling crack out of a room at the Inn. Interviews at the Red Roof Inn corroborated this information in a number of ways: Two African-American males had rented a room at the Inn; that they were from New York City; that they paid cash consistent with the common practices of persons engaged in the drug business; and that the registration indicated that Defendant Cromer was from Brooklyn. More importantly, the response of the occupants to the agents' knocking on the door shifted the agents' suspicions to probable cause. At first, despite movement within the room, no one answered the knocks. After agents identified themselves, again no one opened the door despite movement within the room. That movement included the closing of a bathroom door, leading officers to reasonably conclude that the defendants were attempting to destroy the drugs. Based upon all of those facts, probable cause existed to believe defendants were engaged in drug sales and that evidence of contraband was within the room.

The issue of whether or not probable cause existed, however, is not determinative given the unique facts of this case. Even if probable cause existed, the officers needed exigent circumstances to enter the room without a warrant. The Court finds an urgent need was present at the time when the door opened to justify warrantless entry. In addition to the facts described

6

earlier in this opinion regarding probable cause, officers also knew that crack had possibly been exchanged for weapons.  The two Rutland women intended to exchange a rifle for crack and later told the CI their efforts to purchase the crack was successful.  Sounds emanating from the room reasonably suggested to the officers the defendants were attempting to destroy evidence in the bathroom.  Exigent circumstances clearly justified a warrantless entry, and therefore, the motions to suppress must be denied.

    Dated at Burlington, Vermont this 30th day of April, 2009.

                                      <u>/s/ William K. Sessions III</u>
                                      William K. Sessions III
                                      Chief Judge, U.S. District Court